IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

NINA SIMS                                                                                          PLAINTIFF

vs.                                             CIVIL ACTION NO. :2:11-cv-00225-NBB-SAA

MICHAEL J. ASTRUE                                                                        DEFENDANT

REPORT AND RECOMMENDATIONS

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Nina Sims for supplemental security income (SSI) payments under Section Title XVI of the Social Security Act. Plaintiff protectively filed her application for SSI on October 15, 2008, alleging disability beginning on July 30, 2007. Docket 10, p. 146. Plaintiff's claim was denied initially and on reconsideration. Docket 10, p. 109-113. She filed a request for hearing (Docket 10, p. 98-99) and was represented by an attorney at the administrative hearing on December 9, 2010. Docket 10, p. 37- 81. The Administrative Law Judge (ALJ) issued an unfavorable decision on February 25, 2011 (Docket 10, p. 20-30), and the Appeals Council denied plaintiff's request for a review. Docket 10, p. 7-12. Plaintiff filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review. The parties have not consented to have a magistrate judge conduct all the proceedings in this case, and the undersigned submits this report and recommendation to Senior United States District Judge Neal B. Biggers.

## I. FACTS

Born on December 1, 1986, the plaintiff was twenty-one years old on the date that she

applied for SSI benefits. Docket 10, p. 29, 146. She completed the twelfth grade[1] and has not engaged in substantial gainful activity. Docket 10, p. 27. The plaintiff claimed disability beginning October 15, 2008 due to seizures, a slight hearing problem and being mentally slow. Docket 10, p. 230.

The ALJ determined that plaintiff suffered from "severe" impairments, including a history of seizures, a history of a transient ischemic attack, headaches and borderline intellectual functioning, (Docket 10, p. 22) but that her impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 416.920(d), 416.925 & 416.926). Docket 10, p. 25. He concluded that the plaintiff's seizures and migraine headaches did not meet any category of Listing 11 (Docket 10, p. 25- 26). He further found that plaintiff's mental impairments did not meet or equal the requirements of Listing 12.02 for organic mental disorders; according to the ALJ, the "paragraph B" criteria were not satisfied because the plaintiff experienced only "mild" restrictions in the activities of daily living, "moderate" difficulties in social functioning and in maintaining concentration, persistence or pace and no episodes of decompensation.[2] Docket 10, p. 26. The ALJ determined that plaintiff's testimony of restrictions in her activities of daily living was less than fully credible.[3] Docket 10, p. 28-29.

---

[1]The plaintiff testified that she completed the twelfth grade but failed to graduate from high school because she could not pass a test that was required for graduation. Docket 10, p. 73-74. The plaintiff did not attend special education classes. Docket 10, p. 184.

[2]Additionally, the ALJ found that the record failed to establish "paragraph C" criteria of Listing 12.02.

[3]The ALJ pointed out that the plaintiff denied performing all household chores in a consultative examination in May 2009, but admitted to performing mopping, sweeping, dish washing, and grocery shopping in a later consultative examination in August 2010. Docket 10, p. 28. The ALJ further noted that the plaintiff testified that she could not read a newspaper, a fast food menu, or traffic signs but conceded to Dr. Small that she could read a recipe box.

Relying on the opinion of Dr. Robert Culpepper to determine the plaintiff's physical impairments and on Dr. Sharon Scates for mental impairments, and considering the entire record, the ALJ concluded that the plaintiff retained the Residual Functional Capacity (RFC) to perform a full range of work at all levels of exertion, with the following limitations:

> The claimant can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance. She can frequently perform stooping, crouching, crawling, and kneeling. She [will] experience additional restrictions in working at heights and with moving machinery. The claimant regarding mental issues retains "limited but satisfactory" abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration; complete a normal workday and workweek without psychologically based interruptions; and interact appropriately with supervisors.

Docket 10, p. 28.

Although the plaintiff has no past relevant work, after hearing testimony by a vocational expert [VE] the ALJ determined that plaintiff could perform unskilled jobs at the light level of exertion, such as bagger and housekeeping cleaner. Docket 10, p. 29-30. Considering plaintiff's age, education, work experience and RFC, the ALJ concluded that the plaintiff could perform work that exists in significant numbers in the national economy, and she therefore was "not disabled" under the Social Security Act. Docket 10, p. 30.

The plaintiff claims that the ALJ did not consider all of her severe impairments, including mental retardation under Listing 12.05(C) ( Docket 10, p. 8-13), applied an improper legal standard at step two (Docket 10, p. 13-16), and then did not incorporate all of the plaintiff's limitations into his RFC, which meant that he posed a defective hypothetical to the VE and

---

Docket 10, p. 28-29. The ALJ noted inconsistencies in the plaintiff's description of her history of seizures, reporting a one-year duration to her treating neurologist in September 2007 and a ten-year history to Dr. Small. Docket 10, p. 29.

resulted in a decision that was not supported by substantial evidence. Docket 14, p. 16-21.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[4] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[5] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[6] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[7] At step three, the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[8] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[9] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and

---

[4] *See* 20 C.F.R. § 416.920 (2010).

[5] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[6] 20 C.F.R. § 416.920(b) (2010).

[7] 20 C.F.R. § 416.920(c) (2010).

[8] 20 C.F.R. § 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[9] 20 C.F.R. § 416.920(e) (2010).

past work experience, that she is capable of performing other work.[10] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[11]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[12] even if it finds that the evidence leans against the Commissioner's decision.[13] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a

---

[10] 20 C.F.R § 416.920(g) (2010).

[11] *Muse*, 925 F.2d at 789.

[12] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[13] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

The plaintiff did not engage in substantial gainful activity after October 15, 2008, satisfying step one. Docket 10, p. 22. At step two, the ALJ found that the plaintiff suffered from severe impairments, including a history of seizures, a history of a transient ischemic attack, headaches and borderline intellectual functioning. Docket 10, p. 22. The ALJ evaluated the plaintiff's mental impairments under Listing 12.02, organic mental disorders, and determined at step three that the impairments did not meet the stringent requirements set out in the listings. Docket 10, p. 26- 27.

At step three of the sequential process, plaintiff must prove by objective medical evidence that her impairment, either singly or in combination with other impairments, meets the stringent requirements set out in the listings. *Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that she meets each element of the listing). The plaintiff argues that she met the requirements of Listing 12.05(C) for mental retardation but that the ALJ failed to evaluate her impairment under the proper listing. Docket 10, p. 8-13.

In evaluating the plaintiff's mental limitations, the ALJ examined whether plaintiff's severe impairment of borderline intellectual functioning met Listing 12.02 for organic mental

6

disorders; relying upon the opinion of psychological consultant, Dr. Sharon Scates (Docket 10, p. 25- 26), as reflected in her mental residual functional capacity assessment and psychiatric review technique forms dated June 3, 2009 (Docket 10, p. 379- 396), he found that she did not meet Listing 12.02. Even though Dr. Scates did not examine the plaintiff, the ALJ afforded her opinion "significant weight" because she reviewed the medical evidence of record and has knowledge of the requirements of the disability program. Docket 10, p. 25. However, Dr. Scates evaluated the plaintiff's impairments only under Listings 12.02 Organic Mental Disorders and 12.04 Affective Disorders (Docket 10, p. 379). Plaintiff contends that she meets Listing 12.05(C) Mental Retardation; she argues that Dr. Scates's failure to evaluate her under that Listing, along with the ALJ's reliance upon that flawed evaluation constituted error. Docket 10, p. 379, 383.

Under Listing 12.02, Dr. Scates diagnosed the plaintiff with BIF (borderline intellectual functioning) but checked the box that stated the medically determinable impairment did not precisely satisfy the diagnostic criteria of 12.02. Docket 10, p. 380. No further comment was included. *Id.* Under 12.04, Dr. Scates reported a mood disorder and checked the same box indicating that the impairment did not precisely satisfy the criteria for evaluation under that listing. Docket 10, p. 382. Dr. Scates further found that the plaintiff experienced only "mild" restrictions in the activities of daily living, "moderate" difficulties in social functioning and in maintaining concentration, persistence or pace and no episodes of decompensation. Docket 10, p. 389.

Before Dr. Scates' made her report, several other agency physicians had evaluated the

7

plaintiff's mental condition.[14] On October 6, 2007, consultative physician Dr. Small performed a comprehensive mental status evaluation and found that the plaintiff functioned in the upper limit of mild mental retardation with an accurate full scale IQ of 63. Docket 10, p. 414. Dr. Small evaluated the plaintiff again on March 14, 2009. Docket 10, p. 368. Although he did not perform another intelligence test, he again found that she functioned in the mild mental retardation range.[15] Docket 10, p. 371. The ALJ afforded "minimal weight" to Dr. Small's intelligence testing because the plaintiff later attained "a significantly higher full-scale score than Dr. Small reported" and her "successful completion of high school through grade twelve after having attended solely regular classes further undermines the weight to be accorded to Dr. Small's attempted intelligence testing." Docket 10, p. 25. The ALJ afforded "little weight" to the diagnosis of mild mental retardation in Dr. Small's second report "because no standard intellectual testing was used as the basis for such diagnosis." Docket 10, p. 25.

Dr. Miller-Marshall examined the plaintiff on May 5, 2009 and assigned a full scale IQ of 70, in the borderline classification of intellectual ability. Docket 10, p. 375-376. Dr. Miller-Marshall found that although the plaintiff's physical condition may present additional limitations, "based on her mental ability alone, she would be considered capable of performing routine, repetitive, work-related tasks." Docket 10, p. 377. The ALJ afforded her opinion "some weight." Docket 10, p. 24. Neither Dr. Small or Dr. Miller-Marshall completed a psychiatric

---

[14] In addition to Dr. Small and Dr. Miller-Marshall, Dr. Linda Baker provided a Medical Consultant Review that requested additional information (Docket 10, p. 453, 463) and a Psychiatric Review Technique form that was not completed because insufficient evidence was provided. Docket 10, p. 464- 476.

[15] Additionally, Dr. Small diagnosed the plaintiff with a "mood disorder associated with general physical condition" and "history of seizure disorder." Docket 10, p. 371.

review technique form.

> Listing 12.05 of 20 C.F.R. Part 404, Subpart P, App. 1 provides in part:
>
> Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

The plaintiff's application for disability benefits describes plaintiff as "being mentally slow." Docket 10, p. 230. The ALJ relied on the only non-examining physician in his decision to evaluate the plaintiff's mental condition under Listing 12.02, organic mental disorders, rather than under Listing 12.05 for mental retardation. Organic mental disorder is defined as "[p]sychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of the previously acquired functional abilities." Listing 12.02 of 20 C.F.R. Part 404, Subpart P, App. 1. Evaluating plaintiff under this Listing was certainly understandable in light of her history of seizures and a transient ischemic attack, but the record as a whole demands that her impairments be considered under Listing 12.05 as well.

Unlike Dr. Miller-Marshall and Dr. Small, Dr. Scates did not examine the plaintiff or perform IQ testing. Dr. Scates did not explain why she evaluated the plaintiff under 12.02 and 12.04 but not 12.05 even though the record revealed two IQ scores that met the severity requirements of 12.05. Further, the record does not contain evidence that the plaintiff had lost

9

previously acquired functional abilities, as required by 12.02 for an organic mental disorder. The ALJ nevertheless chose to follow the evaluation of Dr. Scates and exclude the record evidence of two full scale IQ scores that met the severity requirements of Listing 12.05. The undersigned has reviewed all record evaluations and finds no basis for discounting the IQ scores.

The Commissioner argues that although the ALJ did not specifically consider the plaintiff under Listing 12.05C, his determination that the plaintiff functioned in the borderline range of intellectual functioning rather than the mild mental retardation range demonstrated that he did not believe the requirements of 12.05C were met and that that the plaintiff did not demonstrate the requirement of an additional significant work-related limitation of function. Docket 15, p. 7-8. The undersigned finds this argument without merit because the structure of Listing 12.05 for mental retardation is different from that of the other mental disorders,[16] and given that the record contains evidence of mental retardation from two agency physicians, the undersigned is of the opinion that the ALJ's failure to demonstrate his consideration of listing 12.05 warrants a remand of this case for further proceedings. Because the undersigned is recommending that the case be remanded for further proceedings consistent with this opinion, the undersigned will not address the merits of the plaintiff's remaining arguments at this time.

---

[16]Listing 12.00 of 20 C.F.R. Part 404, Subpart P, App. 1, states, in part:
> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

Listing12.02 and 12.04 each consist of a statement describing the disorder addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations). Paragraph C criteria are only addressed if paragraph B criteria are not satisfied.

The parties are referred to 28 U.S.C. § 636(b)(1)(B) and FED. R. CIV. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within fourteen (14) days of this date and "a party's failure to file written objections to the proposed findings, conclusions and recommendation in a magistrate judge's report and recommendation within [14] days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United States Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc) (citations omitted).

Respectfully submitted, this the 20th of August, 2012.

    /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE